**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MARTIN P. SHEEHAN,

        Plaintiff,

v.                                       CIVIL ACTION NO.   2:26-cv-00180

WEST VIRGINIA JUDICIAL
INVESTIGATION COMMISSION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Martin P. Sheehan's ("Plaintiff") Motion for a Temporary Restraining Order and/or a Preliminary and Permanent Injunction.  (ECF No. 11.) For the reasons discussed below, the Court **DENIES** the motion.

## *I.*     *BACKGROUND*

This action arises out of Plaintiff's judicial candidacy for the West Virginia Supreme Court of Appeals ("WVSCA") in the May 2026 Primary Election.   (*See generally* ECF No. 1.)   Plaintiff brings this action against the West Virginia Judicial Investigation Commission ("WVJIC") and Teresa Tarr, Counsel for the WVJIC (collectively, "Defendants").  (*See generally id.*)   As a judicial candidate, Plaintiff must refrain from certain conduct, as proscribed by the West Virginia Code of Judicial Conduct ("the Code"), and enforced by Defendants.   (*Id.* at 3, ¶¶ 7, 10–11.)   The Code "establishes standards for the ethical conduct of judges and judicial candidates."   (ECF No.

1

21-2 at 4, ¶ 1.)   Notably, "[t]he Code consists of four Canons, numbered Rules under each Canon, and Comments that follow and explain each rule."   (*Id.*)   Canon 4 prohibits a candidate for judicial office from engaging "In Political Or Campaign Activity That Is Inconsistent With The Independence, Integrity, Or Impartiality Of The Judiciary."   (ECF No. 21-2 at 5.) (capitalization in original).

Plaintiff takes issue with two specific provisions under Canon 4.   (ECF No. 1 at 3, ¶ 12.) He argues that enforcement of Rule 4.1(A)(10) and (A)(11) "would adversely affect" his "First Amendment rights . . . in an election campaign."   (*Id.*)   Under Rule 4.1 (A)(11) and (A)(10) of the Code,

> [e]xcept as permitted by law,*[] or by Rules 4.2, 4.3, and 4.4, a judge or a judicial candidate* shall not: . . . 10. make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending* or impending* in any court; or 11. in connection with cases, controversies, or issues that are likely to come before the court, make pledges, promises, or commitments that are inconsistent with the impartial* performance of the adjudicative duties of judicial office.

W. Va. Jud. Code R. 4.1(A)(10)–(11).   The Code defines a "Pending Matter" as "a matter that has commenced" or "continues to be pending through any appellate process until final disposition." (ECF No. 21-2 at 2.)   Likewise, an "Impending Matter" is defined as a "matter that is imminent or expected to occur in the near future."   (ECF No. 21-2 at 1.)

Violation of Rule 4.1(A)(10) and (A)(11) may result in "admonishment; reprimand; censure; suspension without pay for up to one year for each violation; a fine of up to $5,000.00 for each violation; and/or where applicable, suspension or annulment of a law license."   (ECF No. 21-2 at 10 (citing W. Va. R. of Discip. Proc. 2.2, 4.12).)

Plaintiff moves this Court for a temporary restraining order and/or temporary or permanent injunction against Defendants because—he alleges—if Defendants were not enjoined from

2

enforcing Rule 4.1(A)(10) and (A)(11), "Plaintiff would suffer a restriction on his ability to communicate with voters before a statewide election to be held in May of 2026."  (ECF No. 12 at 2, ¶ 9.)

Plaintiff filed his motion[1] on March 12, 2026.  (ECF No. 11).  Pursuant to the Court's order, (ECF No. 16), on March 20, 2026, Defendants filed a response, (ECF No. 18), and the Court held a hearing on the motion on March 25, 2026, (ECF No. 21).  At the hearing, Plaintiff admitted two exhibits.  (ECF No. 21.)  As such, the matter is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

"The standard for deciding an application for a temporary restraining order is identical to that for deciding a motion for preliminary injunction."  *Courtland Co. v. Union Carbide Corp.*, No. 2:21-cv-00101, 2021 WL 1255416, at *7 (S.D. W. Va. April 5, 2021) (Copenhaver, J.).  Accordingly, to prevail on either, "the plaintiff must establish '[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009) *vacated on other grounds*, 559 U.S. 1089 (2010), *remanded to*, 607 F.3d 355, 355 (4th Cir. 2010) (reinstating relevant part) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  The Plaintiff must establish all four factors "by a 'clear showing'" before the injunction will issue.  *Imagine*

---

[1] Noticeably absent from Plaintiff's bare bones complaint, (ECF No. 1), and motion, (ECF Nos. 11, 12), is any express contention by Plaintiff that he actually desires to engage in speech prohibited by Rule 4.1 of the Code.  Indeed, Plaintiff hints at a desire to engage in speech prohibited by Rule 4.1, stating that enforcement of the Rule would "adversely affect" and "violat[e]" his First Amendment rights and that the existence of Rule 4.1 "constitutes a[] threat of enforcement against the Plaintiff."  (ECF No. 1 at 3–4, ¶¶ 12, 14, 16; *see also* ECF No. 12 at 2, ¶¶ 5, 9 (alleging that enforcement of the Rule would "adversely affect" his First Amendment rights and "constitute[] a[] threat of enforcement")).  Yet none of his filings express his desire to engage in speech prohibited by Rule 4.1.  Nevertheless, Plaintiff finally made this desire known at the March 25, 2026, motion hearing.

*Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (quoting *Real Truth About Obama, Inc.*, 575 F.3d at 346).

### III.     DISCUSSION

"When 'the irreparable harm that [the plaintiff] has alleged is inseparably linked to his claim of a violation of his First Amendment rights . . . analysis of [the plaintiff's] likelihood of success on the merits' becomes the first and the most important factor for a court to consider." *Ctr. For Individual Freedom, Inc. v. Ireland*,   No. 1:08-00190, 2008 WL 1837324, at *2 (S.D. W. Va. April 22, 2008) (Faber, J.) (quoting *Newsom ex rel. Newsom v. Albemarle County Sch. Bd.,* 354 F.3d 249, 254-55 (4th Cir. 2003); *see also Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014) (stating that likelihood of success on the merits is the "most important factor"); *Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009) ("the 'likelihood of success' prong is the most important to our analysis and often determinative in First Amendment cases"); *Bird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("The first [*Winter*] factor 'is a threshold inquiry and is the most important factor.'" (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). Thus, the Court dedicates most of its analysis below to Plaintiff's likelihood of success on the merits.

#### A.  Likelihood of Success on the Merits

Plaintiff argues that Rule 4.1(A)(10) and (A)(11) function as a prior restraint on his speech under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010).  (ECF No. 12 at 2, ¶ 6.)  Then, Plaintiff argues that the Rule "appear[s]" unenforceable pursuant to the Supreme Court's decision in *Republican Party of Minesota. v. White*, 536 U.S. 765 (2002) (hereinafter

"*White*").   (ECF No. 12 at 2–4, ¶¶ 7–8, 13, 15.)   The Court first addresses the merits of Plaintiff's

prior restraint argument, then turns to his reliance on *White*.

          1.   Prior Restraint

Plaintiff argues—without further explanation—that "[f]undamentally, [Rule 4.1(A)(1)

and (A)(11)] constitute the equivalent of an unconstitutional prior restraint on speech."   (ECF No.

12 at 2, ¶ 6 (citing *Citizens United*, 558 U.S. at 310).   Defendants, however, argue that the Rules

are categorically different from a prior restraint because the Rules call for "action, such as

punishment, *after speaking*," whereas a prior restraint arises when public officials require prior

approval of the speech.   (*See* ECF No. 18 at 4–5 n.1.)   Further, Defendants argue that *Citizens

United* is distinguishable from the present case because the "uniquely complicated nature of

Federal Election Commission regulations paired with the deference courts pay the Federal Election

Commission rendered the challenged regulations 'the equivalent of a prior restraint[.]'"   (*Id.*

(quoting *Citizens United*, 558 U.S. at 335.)   Whereas here, Defendants argue that "the challenged

rules aren't particularly complex nor does the WVJIC receive any special deference."   (*Id.*)   The

Court agrees with Defendants.

"A prior restraint is a legal order forbidding speech 'issued in advance of the time that [the

speech will] occur.'"   *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854

Fed. App'x 521, 525 (4th Cir. 2021) (quoting *Alexander v. United States*, 509 U.S. 544, 550

(1993)).

Here, according to the Code, "[a] judicial candidate can be disciplined for violating any of

the Rules contained in Canon 4 of the Code[.]"   (ECF No. 21-2 at 5, ¶ 3.)   So, it is unclear how

the prior restraint doctrine applies to the Code as the language clearly indicates that a violation can

occur only after the speech is uttered.  *See Nat'l Fed. of the Blind v. F.T.C.*, 420 F.3d 331, 350 n.8 (4th Cir. 2005) ("plaintiffs' prior restraint argument 'ignores the long-held distinction between prior restraints and subsequent punishments.' Traditionally, unconstitutional prior restraints . . . place[] 'unbridled discretion in the hands of a government official or agency.' Here, by contrast, . . . only after the speech is uttered . . . can [a violation] occur and sanctions can be imposed.").  In fact, nowhere in the Code are judicial candidates directed or advised to seek permission or guidance from Defendants on whether their anticipated speech complies with the Code.

Further, Rule 4.1(A)(10) and (11) are not complex, and the courts are not known to give deference to the determinations of the WVJIC.  *Contrast In re Boso*, 921 S.E.2d 679, 687 (W. Va. 2025) ("It is well-established that in judicial disciplinary proceedings, '[t]he Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings.'" (citing Syl. Pt. 1, *W. Va. Jud. Inquiry Comm'n v. Doster*, 271 S.E.2d 427 (W. Va. 1980)) *with Citizens United*, 558 U.S. at 335 ("given the complexity of the regulations and the deference courts show to administrative determinations, a speaker who wants to avoid threats of criminal liability and the heavy costs of defending against FEC enforcement must ask a governmental agency for prior permission to speak.").

Accordingly, the Court finds that Plaintiff is unlikely to prevail on the merits of his prior restraint claim.  *See Real Truth About Obama,* 575 F.3d at 346.

2. *Republican Party v. White*

Aside from his prior restraint argument, Plaintiff effectively hinges the entirety of his argument for injunctive relief on *White*, arguing that the Supreme Court's holding in *White* makes

Rule 4.1(A)(10) and (A)(11) unconstitutional.   (*See* ECF No. 12 at 2, ¶¶ 7–8, 13, 15.)   However, *White* is easily distinguishable from the present case.

In *White*, the Supreme Court applied strict scrutiny to a Minesota "announce" clause and found that the clause violated the First Amendment rights of a judicial candidate.   536 U.S. at 776, 788.   The announce clause prohibited state judges from "announc[ing] his or her views on disputed legal or political issues."   536 U.S. at 769 (quoting Minn. Code of Judicial Conduct, Canon 5(A)(3)(d)(i) (2000)).   The Court applied strict scrutiny to the announce clause and found that the announce clause was not narrowly tailored to serve the state's compelling state interest. *See id.* at 536 U.S. 765.   As discussed below, unlike the loose and unbridled announce clause in *White*, Rule 4.1(A)(10) and (A)(11) are narrowly tailored to serve a compelling state interest.

Under the First Amendment, Congress "shall make no law . . . abridging the freedom of speech."   U.S. Const. amend. I.   The Fourteenth Amendment makes that prohibition applicable to the States.   *Stromberg* v. *California*, 283 U.S. 359, 368 (1931).   Restrictions on "speech about public issues and the qualifications of candidates for elected office commands" the application of strict scrutiny.   *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 443 (2015).   So, "[a] State may restrict the speech of a judicial candidate" provided that the "restriction is narrowly tailored to serve a compelling interest."   *Id.* at 444.

As the Supreme Court recognizes, there is a "'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected judges.'"   *See Willaims-Yulee*, 575 U.S. at 445 (quoting *Caperton* v. *A. T. Massey Coal Co.*, 556 U. S. 868, 889 (2009)).   Indeed, "public perception of judicial integrity is 'a state interest of the highest order."   *Id.* at 446 (quoting *Caperton*, 556 U.S. at 889).   Further, a state's interest in impartiality "extends beyond its interest

7

in preventing the appearance of corruption in legislative and executive elections . . . because the role of judges differs from the role of politicians." *Willaims-Yulee*, 575 U.S. at 446 (citing *White*, 536 U.S. at 783). Indeed, "[a] State may assure its people that judges will apply the law without fear or favor[.]" *Williams-Yulee*, 575 U.S. at 437; *see also Clements v. Fashing*, 457 U.S. 957, 968 (1982) ("It is a serious accusation to charge a judicial officer with making a politically motivated decision. By contrast, it is to be expected that a legislator will vote with due regard to the views of his constituents.").

Here, Defendants argue that "West Virginia has a compelling interest in ensuring an impartial judiciary." (ECF No. 18 at 8.) As the State notes in its judicial handbook for candidates and judges, "[p]ublic confidence in the independence and impartiality of the judiciary is eroded if judges or judicial candidates are perceived to be subject to political influence." (ECF No. 21-2 at 6.) The Court agrees. Through Rule 4.1(A)(10) and (A)(11), West Virginia is assuring its citizens that West Virginia judges will "apply the law without fear or favor[.]" *See Williams-Yulee*, 575 U.S. at 437. Thus, West Virginia has a compelling interest in preserving the judicial impartiality of its courts.

A state's compelling interest in impartiality is narrowly tailored when it operates without unnecessarily "circumscribing protected expression." *White*, 536 U.S. at 774–75 (quoting *Brown v. Hartlage*, 464 U.S. 45, 54 (1982)). Because Rule 4.1(A)(10) and (A)(11) are different, the Court will address the tailoring of each rule individually.

First, Rule 4.1(A)(10), can be described as West Virginia's "announce clause." Pursuant to this rule, judicial candidates may not "make any statement that would reasonably be expected to affect the outcome or impair the fairness of a matter pending* or impending* in any court." W.

8

Va. Jud. Code R. 4.1(A)(10).    Here, Plaintiff argues that under *White*, this rule is unconstitutional. (ECF No. 12, at 2, ¶¶ 7–8.)    Whereas Defendants argue that this rule is narrowly tailored to preserve the state's interest in ensuring that a judge or candidate maintains a lack of bias toward parties in a proceeding.    (*See* ECF No. 18 at 8.)    The Court agrees.

*White* is easily distinguishable.    The announce clause in *White* effectively prohibited judicial candidates from sharing their views on disputed legal or political issues.    *White*, 536 U.S. at 769.    In stark contrast, Rule 4.1(A)(10) merely limits speech that could "reasonably . . . affect the outcome" of a pending or impending judicial proceeding.    W. Va. Jud. Code R. 4.1(A)(10). The rule says nothing about speech restrictions on legal or political issues.    In fact, Rule 4.1(A)(10) expressly *allows* "statements or announcements of personal views on legal, political, or other issues."    W. Va. R. J. C. Rule 4.1 cmt. 13.    For instance, Rule 4.1(A)(10) would allow a candidate to distribute literature that criticizes past WVSCA decisions.    *Cf. White*, 536 U.S. at 767–79 (discussing the complaint issued against the Minnesota judicial candidate for "distribut[ing] literature criticizing several Minnesota Supreme Court decisions on issues such as crime, welfare, and abortion").    So, unlike *White*, this rule does not "place most subjects of interest to the voters off limits."    *Id.* at 787.

Further, the use of "reasonably" in Rule 4.1(A)(10) and the Code's definitions of "Impending Matter" and "Pending Matter" provide limitations that make Rule 4.1(A)(10) narrow in application.    W. Va. Jud. Code R. 4.1(A)(10).    Indeed, Rule 4.1(A)(10) does not say that a judicial candidate may not make statements on any matter that could come before any court at any time.    Such expansive language would certainly be overbroad and unconstitutional under *White*. *See White*, 536 U.S. at 773 ("the announce clause prohibits a judicial candidate from stating his

9

views on any specific nonfanciful legal question within the province of the court for which he is running except in the context of discussing past decisions -- and in the latter context as well, if he expresses the view that he is not bound by *stare decisis*.").   Rather, Rule 4.1(A)(10) limits speech that would reasonably have an effect on a matter "that has commenced . . . until final disposition" or "is imminent or expected to occur in the near future."   (ECF No. 21-2 at 1–2.)

Accordingly, Rule 4.1(A)(10) is narrowly tailored to serve West Virginia's compelling interest in preserving the impartiality of its courts.

Second, Rule 4.1(A)(11), can be described as the "pledges and promises clause."   Under this Rule, "in connection with cases, controversies, or issues that are likely to come before the court" judicial candidates are prohibited from making "pledges, promises, or commitments that are inconsistent with the impartial* performance of the adjudicative duties of judicial office."   W. Va. Jud. Code R. 4.1(A)(11).   Here, Defendants argue that West Virginia has "'compelling interests in the principles of justice, the rule of law, and a judiciary characterized by fairness, impartiality, independence, integrity, and competence.'"   (ECF No. 18 at 7 (quoting *Bauer v. Shepard*, 634 F. Supp. 2d 912, 944 (N.D. Ind. 2009).)   Then, Defendants argue that Rule 4.1(A)(11) is "narrowly tailored to further those compelling interests because prohibited speech 'is limited to pledges, promises, and commitments that are inconsistent with the impartial performance of the adjudicative duties of judicial office' while 'broad political speech' is still permitted."   (*Id.* (quoting *Bauer*, 634 F. Supp. 2d at 948).)   Plaintiff, however, again raises *White* to argue that Rule 4.1(A)(11) is unconstitutional.   (ECF No. 12 at 2, ¶ 7–8.)   Yet Plaintiff overlooks pertinent language from *White* that clearly contradicts his argument.

Curiously, Plaintiff argues that *White* makes Rule 4.1(A)(11) unconstitutional even though the Supreme Court expressly distinguished the Minnesota announce clause from Minnesota's "separate prohibition" on pledges and promises.   *See White*, 536 U.S. at 780.   In fact, the Court went even further than merely distinguishing the clause and stated that "campaign promises" may "pose a special threat to openmindedness because the candidate, when elected judge, will have a *particular* reluctance to contradict them."   *See id.*   So, although Plaintiff rests the majority of his reasoning on *White*, Rule 4.1(A)(11) is obviously a separate prohibition from the Minnesota announce clause in *White*.   As such, the Court disagrees with Plaintiff that Rule 4.1(A)(11) is unconstitutional under *White*.   Further, Rule 4.1(A)(11) is narrowly tailored to serve West Virginia's compelling interest in impartiality.

The plain language of Rule 4.1(A)(11) is already narrow in application, and the comments to the Rule make its narrow application even more apparent.   Pursuant to the comments, "statements or announcements of personal views, legal, political, or other issues" are not prohibited under this Rule and should be contrasted with "pledges, promises, or commitments[.]" (ECF No. 21-2 at 8.)   Additionally, pledges or promises about "judicial organization, administration, and court management" are permitted under the Rule.   (*Id.*)   This means that the only statements Rule 4.1(A)(11) limits are statements that a "reasonable person would believe that the candidate" made "to reach a particular result."   (*Id.*)   Accordingly, Rule 4.1(A)(11) is narrowly tailored because it is "not overinclusive" and "restricts [only] a narrow slice of speech." *See Williams-Yulee*, 575 U.S. at 435.

Thus, the Court finds that both Rule 4.1(A)(10) and (A)(11) are narrowly tailored to serve the State's compelling interest.   Consequently, Plaintiff is unlikely to succeed on the merits of his

First Amendment claim under *White*.   *See Real Truth About Obama,* 575 F.3d at 346.   Next, the Court briefly addresses the other *Winter* factors.

### B.    Irreparable Harm

Under the second *Winter* factor, the Plaintiff must make a "'clear showing' that [he] will suffer harm that is 'neither remote nor speculative, but actual and imminent.'"   *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Direx Israel, Ltd. v. Breakthrough Medical Group*, 952 F.2d 802, 812 (4th Cir. 1991)).   Here, Plaintiff only argues that enforcement of Rule 4.1(A)(10) and (A)(11) is a "real possibility."   (ECF No. 12 at ¶ 10.)   This allegation that enforcement is a "possibility" does not clearly show that Plaintiff will suffer "actual" and "imminent harm."   *Mountain Valley Pipeline, LLC*, 915 F.3d at 216.   Moreover, it is undisputed that Defendants are *not* investigating Plaintiff for any alleged violations of Rule 4.1(A)(10) and (A)(11), nor are they bringing any enforcement actions against Plaintiff.   (ECF No. 19 at 2.); *cf. White*, 536 U.S. at 768–69 (noting that a complaint was filed against one of the petitioners for violating the announce clause).   Plaintiff himself fails to identify what sanctions, if any, would actually be imposed against him for his speech.[2]   The Court will not speculate as to Plaintiff's hypothetical harm.   Thus, Plaintiff cannot satisfy the second factor.

---

[2] Plaintiff cites to Rule 4.12 of the West Virginia Rules of Disciplinary Procedure to argue that "sanctions for violations of [Rule 4.1(A)(10) and (A)(11)] may include, admonishment, censure, suspension, a fine, and other sanctions[.]"   However, to the Court's knowledge, no sanctions have ever been imposed under Rule 4.1(A)(10) and (A)(11).   During the March 25, 2026, hearing the parties also conceded that the WVSCA and the Fourth Circuit Court of Appeals have never addressed these rules.   Still, to further support his contention that Plaintiff is "under a threat of sanctions[,]" Plaintiff cites *In re Callaghan*, 796 S.E.2d 604 (W. Va. 2017).   (ECF No. 12, at 3, ¶ 14.)   Yet that case did not concern enforcement of Rule 4.1(A)(10) or (A)(11) and the WVSCA recognized that "a determination of discipline must be premised upon the unique facts of each individual case."   *Id.* at 522.   Accordingly, Plaintiff's showing of "imminent actual harm" is less than clear.   *See Mountain Valley Pipeline, LLC*, 915 F.3d at 216.

### C. Balance of Equities and the Public Interest

*Winter* factors three and four merge when the government is the defendant. *Pierce v. North Carolina State Board of Elections*, 97 F.4th 194, 225 (4th Cir. 2024). The two final factors merge here because Plaintiff brought this action against State Defendants. (*See generally* ECF No. 1.) Under this factor, "[c]ourts must weigh any potential harm to the nonmoving party, and also any potential harm to the public if relief is granted." *AFSCME*, 2025 WL 1249608, at *63 (citing *Continental Group Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 356-57 (3d Cir. 1980)).

Plaintiff does not provide an express reason why the equities appear to favor him, instead he argues that the decision in *White* and the provisions at issue here "should leave an impartial observer with the unmistakable conclusion about the balance of equities favoring the Plaintiff." (ECF No. 12 at 3–4, ¶ 15.) Plaintiff also argues that the "[t]he public interest in robust campaign activity also favors striking impediments to such activity." (*Id.* at 4, ¶ 16.) Defendants argue that "the public has no interest in a Supreme Court campaign season where candidates are permitted to make improper promises that undermine judicial impartiality." (ECF No. 18 at 9.)

Here, the balance of equities favors Defendants because they seek to preserve and protect judicial impartiality, and Rule 4.1(A)(10) and (A)(11) restrict only a narrow amount of speech. Additionally, the public has an interest in knowing that "judges will apply the law without fear or favor[.]" *Williams-Yulee*, 575 U.S. 433, 437. Rule 4.1(A)(10) and (A)(11) protect that interest. Thus, Plaintiff cannot satisfy these two final factors.

### IV. CONCLUSION

For the reasons discussed herein, The Court **DENIES** the Motion for a Temporary Restraining Order and/or a Preliminary and Permanent Injunction. (ECF No. 11.)

13

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 1, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14